Electronically Filed
7/11/2018 8:05 AM
Lois Rogers, Smith County District Clerk
Reviewed By: Kim Hazuka

CAUSE NO. 18-1602-A _____

| | | |
|---|---|---|
| TED KAMEL, | § § | IN THE DISTRICT COURT OF |
| *Plaintiff,* | § § | |
| v. | § § | SMITH COUNTY, TEXAS |
| AVENU INSIGHTS & ANALYTICS, LLC, and CHRIS YEARY, | § § § | |
| *Defendants.* | § § | \_\_\_\_ JUDICIAL DISTRICT |

## PLAINTIFF'S ORIGINAL PETITION

Plaintiff Ted Kamel ("Kamel") brings this action against Avenu Insights & Analytics, LCC ("Avenu") for declaratory judgment, and for tortious interference with a contract, tortious interference with a business relationship, attorneys' fees, litigation expenses, and costs of court. In support of its original petition, Plaintiff respectfully shows the Court the following:

### I.

### DISCOVERY CONTROL PLAN

1.   Plaintiff intends to conduct discovery under Level 2 of Texas Rule of Civil Procedure 190.

### II.

### PARTIES

2.   Plaintiff Ted Kamel ("Kamel") is a resident of Smith County, Texas.

3.   Defendant Avenu Insights & Analytics, LLC ("Avenu") is a foreign limited liability company doing business in Texas. It may be served with process by serving its registered agent, National Registered Agents, Inc., 350 N. St. Paul Street, Suite 2900, Dallas, Texas 75201.

4. Defendant Chris Yeary is a resident of Denton County, Texas.

### III.

### JURISDICTION AND VENUE

5. This Court has subject matter jurisdiction over this matter because the amount in controversy is within the Court's jurisdictional limits.

6. Kamel seeks monetary relief over $200,000 but not more than $1,000,000 or less and a demand for judgment to which the party deems himself entitled.

7. This Court has personal jurisdiction over Avenu (a) because Avenu is a limited liability company that regularly conducts business in, engages in commerce in, and/or has systematic contacts with the State of Texas, and/or (b) because Avenu's actions within the State of Texas give rise to Kamel's causes of action.

8. This Court has personal jurisdiction over Yeary because Yeary is a Texas resident.

9. Venue is proper pursuant to § 15.002(a)(1) of the Texas Civil Practice and Remedies Code because all or a substantial part of the events or omissions giving rise to Kamel's claims and the damages suffered by Kamel occurred in Smith County.

### IV.

### FACTUAL BACKGROUND

*A. Kamel's Employment with Avenu*

10. In 2006, Kamel began working at Avenu as a Senior Advisor.

11. Kamel was at at-will employee and did not have an employment agreement with Avenu.

12. Chris Yeary is the Vice President of Sales Tax for Avenu. Yeary manages the operations side of acquiring and managing sales tax revenue for Texas clients. While employed at Avenu, Kamel reported to Yeary for tax-based client matters.

13. Kamel left Avenu on March 29, 2018.

14. Yeary and other managers were unhappy with Kamel's departure.

### B. Kamel's Employment with Sales Tax Assurance

15. On May 13, 2018, Kamel received an offer of employment from Sales Tax Assurance, an HdL Company ("STA"), to work for STA in Texas. Kamel accepted this offer on May 15, 2018, and began working on June 4, 2018. Kamel's employment agreement with STA included a starting salary of $100,000, plus commissions and bonuses; full medical benefits; and stock in the employee-owned company. Under Kamel's employment agreement with STA, STA prohibits Kamel from using any information Kamel obtained from prior employment.

16. Avenu sent a "Notice of Breach" to Kamel on June 20, 2018, alleging that Kamel is bound by Avenu's "Nondisclosure, Noncompete And Non-solicitation Agreement" and that Kamel's "acceptance of employment with STA within the Central Region is in direct violation of the terms of the Agreement." Avenu alleged that Kamel "so cavalierly breached [his] non-compete obligations" and that Avenu is "concerned that [Kamel] may violate [the] non-disclosure obligations." Avenu threatened Kamel that it would "aggressively pursue all of [its] legal and equitable remedies, unless you immediately resign your position with STA."

17. Upon information and belief, Avenu sent a letter to STA: (i) claiming that Kamel is bound by the Non-compete Agreement; (ii) threatening legal action against STA if STA continued to employ Kamel; and (iii) demanding that STA terminate its employment relationship with Kamel. Attached to this letter, Avenu included a blank copy of an unsigned, form Non-

compete Agreement that contained neither Kamel's name nor Kamel's signature — although the Non-compete Agreement, by its terms, requires both to be valid.

18. In response to Avenu's letter, STA attempted to work something out with Avenu but Avenu continued to demand that STA fire Kamel.

19. In response to Avenu's threats, STA fired Kamel on July 2, 2018.

### C. Avenu's Alleged "Nondisclosure, Noncompete And Non-solicitation Agreement"

20. According to Avenu's Notice of Breach letter, the unsigned, form "Covenant Not to Compete" purportedly states:

> 2.1 During Employee's employment with [Avenu] and for a period of twelve (12) months following the termination of Employee's employment with [Avenu] whether for cause or voluntarily, Employee agrees to refrain from owning or controlling any interest in, or working (defined as performing duties and having responsibilities that are the same or similar in nature to those that Employee performed while employed by GRS), directly or indirectly, for, any person, firm, partnership, corporation, or other entity that is: (i) in competition with GRS (a "GRS Competitor"). A GRS Competitor means a person or entity engaged in business as a provider of revenue enhancement, analytics, technology and consulting services to government agencies, within the Central Region to include; Colorado, New Mexico, North Dakota, South Dakota, Nebraska, Kansas, Oklahoma, Texas, Minnesota, Iowa, Missouri, Arkansas, and Louisiana.

21. The restrictive covenants in the Non-compete Agreement seek to preclude Kamel, for a period of one year from the end of his employment at Avenu, from "owning or controlling any interest in, or working" either "directly or indirectly, for, any person, firm, partnership, corporation, or other entity" that is in competition with Avenu, which means a "person or entity engaged in business as a provider of revenue enhancement, analytics, technology and consulting services to government agencies, within the Central Region to include; Colorado, New Mexico,

North Dakota, South Dakota, Nebraska, Kansas, Oklahoma, Texas, Minnesota, Iowa, Missouri, Arkansas, and Louisiana."

22. Even assuming *arguendo* that a valid and enforceable agreement existed between the parties, the restrictive provisions of the alleged Non-compete Agreement are unenforceable pursuant to applicable Texas law. Such language, if somehow enforceable, would prevent Kamel from working for any company anywhere in the world in a Senior Advisor position if that company also happens to engage in revenue enhancement, analytics, technology, or consulting services for government agencies within any of the thirteen states listed. Thus, based on such language, even if Kamel were to move to California, work for a company based in California, work solely within in the State of California, and maintain zero contacts outside of California, Kamel could still be in violation of the Non-compete Agreement if the Californian company happens to provide revenue enhancement, analytics, technology, or consulting services to any government agency within Colorado, New Mexico, North Dakota, South Dakota, Nebraska, Kansas, Oklahoma, Texas, Minnesota, Iowa, Missouri, Arkansas, or Louisiana.

23. Further, the Non-compete Agreement, if somehow enforceable, would prevent Kamel from owning any interest in any entity that happens to engage in any revenue enhancement, analytics, technology, or consulting services for any government agency within Colorado, New Mexico, North Dakota, South Dakota, Nebraska, Kansas, Oklahoma, Texas, Minnesota, Iowa, Missouri, Arkansas, or Louisiana.

V.

CAUSES OF ACTION

Count 1
Declaratory Judgment (Avenu)

24. Kamel incorporates the foregoing paragraphs as if completely set forth herein.

25. This action is brought under the Uniform Declaratory Judgments Act, Chapter 37 of the Texas Civil Practice and Remedies Code.

26. A justiciable controversy exists as to the enforceability of the Non-compete Agreement, as evidenced by Avenu's demand letters sent to Kamel and STA.

27. Kamel expressly denies Avenu's interpretation of the enforceability and all other aspects of the Non-compete Agreement.

28. While Kamel alleges the restrictive covenants in the Non-compete Agreement are overbroad, unreasonable, and contrary to public policy, rendering them unenforceable, Avenu has threatened legal action based upon Kamel's purported breach of the restrictive covenants and has used its false allegations to successfully compel STA to fire Kamel.

29. Further, Avenu has failed or refused to provide Kamel with any signed Non-compete Agreement between Kamel and Avenu.

30. Kamel received no additional consideration from Avenu for any such Non-compete Agreement, making the alleged Non-Compete Agreement between Kamel and Avenu invalid as a matter of law under applicable Texas law. *Alex Sheshunoff Mgmt. Services, L.P. v. Johnson*, 209 S.W.3d 644, 651 (Tex. 2006) ("The covenant [not to compete] cannot be a stand-alone promise from the employee lacking any new consideration from the employer.").

31. Kamel requests that this Court enter a judgment declaring the parties' rights and obligations with respect to the Non-compete Agreement, and seeks a declaration that the alleged Non-compete Agreement is unenforceable as a matter of law.

### Count 2
### Tortious Interference with Contract (Avenu)

32. Kamel incorporates the foregoing paragraphs as if completely set forth herein.

33. Kamel had a valid employment contract with STA.

34. Avenu knew or had reason to know of Kamel's employment contract with STA and Kamel's interest in that employment contract.

35. By threatening legal action if STA did not fire Kamel, Avenu willfully and intentionally interfered with STA and Kamel's employment contract.

36. Avenu's interference proximately caused injury to Kamel, which resulted in actual damages or losses, including lost wages, commissions, medical benefits, and stock options.

37. Kamel seeks actual damages within the jurisdictional limits of this Court.

38. Furthermore, because Kamel's injury resulted from Avenu's malice or actual fraud, Kamel is entitled to exemplary damages under Tex. Civ. Prac. & Rem. Code § 41.003(a).

### Count 3
### Tortious Interference with Prospective Relations (Avenu)

39. In the alternative, Avenu interfered with Kamel's prospective business relationship with STA.

40. Kamel was prepared to enter into an employment contract with STA. STA made an offer of employment to Kamel, which included a starting salary of $100,000, plus commissions and bonuses; full medical benefits; and stock in the employee-owned company. Kamel accepted this offer of employment.

41. By nature of the employment relationship, Kamel had an ongoing business relationship with STA.

42. Avenu knew or had reason to know of Kamel's business relationship with STA and intentionally interfered with it by threatening legal action if the business relationship continued.

43. Avenu's threats were independently tortious, regardless of the effect those actions had on Kamel's business relationship with STA.

44. Kamel suffered actual damages or loss because Avenu's interference prevented Kamel from continuing his business relationship with STA.

45. Avenu's interference proximately caused injury to Kamel, which resulted in actual damages or losses, including lost wages, commissions, medical benefits, and stock options.

46. Kamel seeks actual damages within the jurisdictional limits of this Court.

47. Furthermore, because Kamel's injury resulted from Avenu's malice or actual fraud, Kamel is entitled to exemplary damages under Tex. Civ. Prac. & Rem. Code § 41.003(a).

### Count 4
### Tortious Interference with Prospective Relations (Yeary)

48. Yeary was Kamel's direct supervisor at Avenu on certain matters and upon information and belief, Kamel alleges that if any individual employees engaged in acts constituting intentional interference, then Yeary, as Kamel's direct supervisor, more likely than not either: (i) engaged in such acts individually, and/or (ii) knowingly participated in the tortious interference with Kamel's business relationship with STA.

49. Further, Kamel (a) states his intention to identify through discovery the identity of other defendants who engaged in the above actions and/or knowingly participated in the tortious interference with Kamel's business relationship with STA in Texas; (b) hereby requests that Avenu file Rule 194 Disclosures; and (c) requests that Avenu provide dates for the deposition of Avenu's corporate representative on all issues relating to Kamel's employment and departure from Avenu.

50. Yeary's status as an agent of Avenu does not protect Yeary (and/or the other individual Avenu employees to be identified through discovery) from individual liability. As the Court of Appeals held in *Kingston v. Helm*, 82 S.W.3d 755, 764–67 (Tex. App.—Corpus Christi 2002, pet. denied) (citations omitted):

> An agent who does an act [that is] otherwise a tort is not relieved from liability by the fact that he acted at the command of the principal or on account of the principal . . . .
> We believe that still to be the law regarding the circumstances under which a corporate agent may be held liable for misrepresentation and fraud. Accordingly, we hold that Helm may be held liable individually for the torts he is alleged to have personally committed.
> . . . .
> The fact that Helm is a shareholder or an owner or an officer of GDI is not relevant to the question of whether he can be held individually liable for his own tortious conduct. The longstanding law in Texas is clear that he can be held so liable...for [his] own tortious conduct.

51. Alternatively, Yeary and/or other individual employees to be identified through discovery may be liable for merely participating in the tortious acts of Avenu. As the *Kingston* court held: "A corporate officer may be personally liable for corporate wrongdoing when that officer is an 'active participant in the tortious conduct or has actual or constructive knowledge of the corporation's tortious conduct.'" 82 S.W.3d at 761–62 (quoting *Leitch v. Hornsby*, 935 S.W.2d 114, 116 (Tex. 1996)).

52. Kamel was prepared to enter into an employment contract with STA. STA made an offer of employment to Kamel, which included a starting salary of $100,000, plus commissions and bonuses; full medical benefits; and stock in the employee-owned company. Kamel accepted this offer of employment.

53. By nature of the employment relationship, Kamel had an ongoing business relationship with STA.

54. Yeary and/or other Avenu employees knew or had reason to know of Kamel's business relationship with STA and intentionally interfered with it by demanding that STA fire Kamel.

55. Yeary's and/or other Avenu employees' actions were independently tortious, regardless of the effect those actions had on Kamel's business relationship with STA.

56. Kamel suffered actual damages or loss because the tortious interference by Yeary and/or other Avenu employees prevented Kamel from continuing his business relationship with STA.

57. The tortious interference by Yeary and/or other Avenu employees proximately caused injury to Kamel, which resulted in actual damages or losses, including lost wages, commissions, medical benefits, and stock options.

58. Kamel seeks actual damages within the jurisdictional limits of this Court.

### Count 5
### Attorneys' Fees, Expenses, and Costs (Avenu)

59. Kamel incorporates the foregoing paragraphs as if completely set forth herein.

60. Kamel is entitled to recover its reasonable and necessary attorneys' fees, expenses, and costs incurred in the prosecution of this lawsuit pursuant to Texas Civil Practice and Remedies Code § 37.009.

## VI.

### CONDITIONS PRECEDENT

61. Kamel incorporates the foregoing paragraphs as if completely set forth herein. All conditions precedent to Kamel's claims for relief have been performed or have occurred.

## VII.

### JURY DEMAND

62. Kamel demands his right to trial by jury.

## VIII.

## PRAYER FOR RELIEF

Wherefore, Kamel respectfully prays that Avenu be cited to appear and answer herein, and that judgment be entered against Avenu and in favor of Kamel for:

a. Kamel's actual, consequential, and special damages;

b. Exemplary damages;

c. A declaration that there was no signed or valid non-compete agreement between Kamel and Avenu;

d. A declaration that the Non-compete Agreement is unenforceable as a matter of law for lack of consideration and/or for being overbroad, unreasonable, or contrary to public policy;

e. A declaration that Kamel is not bound by the Non-compete Agreement;

f. Pre- and post-judgment interest at the highest rate allowed by law;

g. Attorneys' fees, costs, and expenses; and

h. Such other and further relief both at law and/or equity, to which Kamel is justly entitled and such that justice be done.

Respectfully submitted,

THOMPSON & KNIGHT, LLP


By:     */s/ Joseph Pevsner*
        Joseph Pevsner
        State Bar No. 15874500
        Joseph.Pevsner@tklaw.com

        Emily A. Fitzgerald
        State Bar No. 24097690
        Emily.Fitzgerald@tklaw.com

One Arts Plaza
1722 Routh Street, Suite 1500
Dallas, Texas 75201
Tel. (214) 969-1700
Fax (214) 969-1751


**ATTORNEYS FOR PLAINTIFF
TED KAMEL**