IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
TYLER DIVISION

| | | |
|---|---|---|
| TED KAMEL, | § § § | |
| Plaintiff, | § § | |
| v. | § § | NO. 6:18-cv-00422-JDK-KNM |
| AVENU INSIGHTS & ANALYTICS, LLC, | § § § | |
| Defendant. | § § | |

**PLAINTIFF TED KAMEL'S RESPONSE TO DEFENDANT'S MOTION TO COMPEL**

Plaintiff Ted Kamel ("Kamel") files this Response to Defendant Avenu Insights & Analytics, LLC's ("Defendant" or "Avenu") Motion to Compel as follows:

## I. INTRODUCTION

Avenu's Motion to Compel is another attempt to drive-up the costs of litigation against an individual Plaintiff to pursue meritless fishing expeditions. Avenu asks the Court to allow it to forensically image Kamel's entire personal computer and other personal devices.[1] Avenu does not specify any item or category of items to be inspected. Furthermore, Kamel has already produced documents derived from forensically imaging his personal email address with key search terms. Lastly, Avenu's request for the Court to impose sanctions against Kamel is also unwarranted as there is no evidence Kamel acted in bad faith in the accidental destruction of his cell phone.

## LEGAL STANDARD

Under Federal Rule of Civil Procedure 26(b)(1), parties "may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense . . . ." FED. R. CIV. P.

---

[1] Avenu has never served a formal request to inspect Kamel's personal computer pursuant to Federal Rule of Civil Procedure 34(b).

26(b)(1). Relevance, for the purposes of Rule 26(b)(1), is when the request is reasonably calculated to lead to the discovery of admissible evidence. *Id.*; *Crosby v. La. Health & Indem. Co.*, 647 F.3d 258, 262 (5th Cir. 2011). It is well-established that "control of discovery is committed to the sound discretion of the trial court." *Freeman v. United States*, 556 F.3d 326, 341 (5th Cir. 2009) (quoting *Williamson v. U.S. Dep't of Agric.*, 815 F.2d 368, 382 (5th Cir. 1987)). Federal Rule of Civil Procedure 34(b) provides that a request for production or inspection "must describe with reasonable particularity each item or category of items to be inspected." FED. R. CIV. P. 34(b)(1)(A).

The federal rules follow a proportionality standard for discovery. FED. R. CIV. P. 26(b)(1). Under Rules 26(b)(1) and 26(b)(2)(C)(iii), a court can – and must – limit proposed discovery that it determines is not proportional to the needs of the case, considering the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit – and the court must do so even in the absence of a motion. *See Crosby*, 647 F.3d at 264. Thus, as amended, Rule 26(b)(2)(C) provides that, "[o]n motion or on its own, the court must limit the frequency or extent of discovery otherwise allowed by these rules or by local rule if it determines that: (i) the discovery sought is unreasonably cumulative or duplicative, or can be obtained from some other source that is more convenient, less burdensome, or less expensive; (ii) the party seeking discovery has had ample opportunity to obtain the information by discovery in the action; or (iii) the proposed discovery is outside the scope permitted by Rule 26(b)(1)." FED. R. CIV. P. 26(b)(2)(C).

And the party seeking discovery is required is subject to Rule 26(g)(1)'s requirement to certify "that to the best of the person's knowledge, information, and belief formed after a

reasonable inquiry: . . . (B) with respect to a discovery request. . . , it is: (i) consistent with these rules and warranted by existing law or by a nonfrivolous argument for extending, modifying, or reversing existing law, or for establishing new law; (ii) not interposed for any improper purpose, such as to harass, cause unnecessary delay, or needlessly increase the cost of litigation; and (iii) neither unreasonable nor unduly burdensome or expensive, considering the needs of the case, prior discovery in the case, the amount in controversy, and the importance of the issues at stake in the action"; and faces Rule 26(g)(3) sanctions "[i]f a certification violates this rule without substantial justification." FED. R. CIV. P. 26(g)(1)(B), 26(g)(3); *see generally Heller v. City of Dallas*, 303 F.R.D. 466, 475-77, 493-95 (N.D. Tex. 2014).

Rule 37(a)(5)(B)-(C) further provide in pertinent part that, "[i]f the motion is denied, the court . . . must, after giving an opportunity to be heard, require the movant, the attorney filing the motion, or both to pay the party . . . who opposed the motion its reasonable expenses incurred in opposing the motion, including attorney's fees," "[b]ut the court must not order this payment if the motion was substantially justified or other circumstances make an award of expenses unjust," and that, "[i]f the motion is granted in part and denied in part, the court may issue any protective order authorized under Rule 26(c) and may, after giving an opportunity to be heard, apportion the reasonable expenses for the motion." FED. R. CIV. P. 37(a)(5)(B)-(C).

### III. ARGUMENT

**A.     Avenu's Request to Forensic Image Kamel's Personal Electronic Devises And Email Accounts is an Impermissible Fishing Expedition**

Avenu's request to forensically image Kamel's personal electronic devises and email accounts is an impermissible fishing expedition and an invasion of Kamel's privacy rights. First, Avenu has adduced no search parameters to limit Avenu's access to Kamel's information of a personal and confidential nature that have no possible relevant to the litigation. Avenu's request

3

must state the specific nature of the data on the hard drives that is to be produced. Avenu has failed to do so.

Second, Kamel has already produced all relevant documents that exists on Kamel's personal computer. Avenu's allegations in its Counterclaim is that Avenu provided Kamel with confidential and proprietary information and that Kamel has been using this information in violation of the 2006 Agreement and 2017 Agreement. [*See generally* Dkt #47, ¶¶ 37-53]. Kamel could only access this information though his MuniServices laptop, where he had access to his MuniServices email account and the "password protected SalesForce system of Avenu." [*See* Dkt. #50, ¶ 4]. Thus, any information of Avenu that allegedly exists on Kamel's personal computer (and devices) could only have been transferred through his MuniServices email account to Kamel's personal msn.com email account. (*See* Dkt #47, ¶¶ 37).[2] Thus, to comply with his discovery obligations, Kamel conducted a forensic search of Kamel's personal msn.com email account, with a search term list that captured any relevant emails and documents, including any email Kamel could have possibly sent himself from his MuniServices email account since 2017.[3] No justification exists to allow Avenu full, if any, access to Kamel's personal computer and msn.com email account.[4]

Third, the fact that the client list that Avenu claims was misappropriated was allegedly created on Kamel's personal computer by Michael Cordaro also does not support an overly broad request to forensically scan Kamel's entire computer. First, this client list, if created on Kamel's personal computer, is certainly not proprietary or confidential information that Avenu *provided*

---

[2] The crux of Avenu's allegations is that Kamel transferred a confidential client list from his Avenu computer to his personal email address.

[3] Attached to this Response as Exhibit A is the unsworn declaration of Jared Parks who performed the forensic collection and imaging of Kamel's msn.com email account. After the search, Kamel produced KAMEL000091-KAMEL001132.

[4] Counsel for Avenu has neither conferred or inquired about the search terms included on the list.

4

Kamel. Second, Mr. Cordaro testified, under oath, regarding how he created the list. This request to forensically scan Kamel's personal computer for internet search histories and other evidence related to the creation of the client list is redundant, unnecessary, and certainly not proportional to the needs of this case. Lastly, the fact that Kamel may have shown Michael Cordaro a copy of a list that allegedly appeared to be the same client list is merely the result of the forensic search Kamel previously conducted on his personal msn.com email account.[5] [Ex. B, ¶ 4]. All of those documents have been produced.[6] "[A] mere desire to check that the opposition has been forthright in its discovery responses is not a good enough reason" for a court order compelling an exhaustive computer forensic examination." A*reizaga v. ADW Corp.*, No. 3:14-CV-2899-B, 2016 WL 9526396, at *3 (N.D. Tex. Aug. 1, 2016) (holding "[defendant's] request to obtain a forensic image of Plaintiff's personal electronic devises [was] to attenuated and [was] not proportional to the needs of the case" when weighed "against the significant privacy and confidentiality concerns implicated by [defendant's] request—even with [defendant's] offer to pay all expenses and to use a third-party vendor who will restrict [defendant's] access to the substantive information of any user-created files and particularly data that appears to be of a personal nature that may be included in the proposed forensic image.").

Furthermore, Kamel's former work email account and the notices the email account receives from certain programs like Dropbox are controlled by Avenu. Avenu admits that Kamel's access to certain programs provided by Avenu, including access to his work email account Ted.Kamel@muniservices.com, was terminated as of March 29, 2018 (date of his resignation) and

---

[5] Attached to this Response as Exhibit B is the unsworn declaration of Austin P. Smith.

[6] Avenu's assertion that documents produced by Kamel included messages and other emails with Avenu's confidential information attached is blatantly false and Avenu cites to no record supporting that statement. [Dkt #51 at 3].

full access was giving to another employee of Avenu. [Response to RFA 1-4].[7] In October, counsel for Kamel reached out to counsel for Avenu to inform him that Avenu had authorized access to the Dropbox account with Ted.Kamel@MuniServices.com and that Avenu could request an Audit Trail Report that shows the access and activity of the Dropbox account since January 2017.[8] Counsel for Avenu refused, claiming Avenu did not have access and was unwilling to contact Dropbox. Thus, counsel for Kamel contacted Dropbox Support to find out who has authority and access to the Dropbox account.[9] Dropbox Support informed counsel for Kamel that whoever was in control of the email address had access to the Dropbox account. Thus, Avenu, not Kamel, had and has ample opportunity to access these accounts. Instead, Avenu speculates that these notifications are the result of the actions of Kamel. [*See* Dkt. # 51 at 3]. The Court should deny Avenu's Motion to Compel in its entirety.

**B.      Sanctions Against Kamel Are Unwarranted**

To support the severest sanctions under Rule 37(b)—striking pleadings or dismissing a case—the Fifth Circuit has usually required a finding of bad faith or willful conduct. *Pressey v. Patterson,* 898 F.2d 1018 1021 (5th Cir.1990). In the context of the federal court's inherent power to sanction a litigant by dismissing the case, "bad faith" is judged by "necessarily stringent" standards. *Batson v. Neal Spelce Associates, Inc.,* 805 F.2d 546, 550 (5th Cir.1986). Sanctions against Kamel in this case are unwarranted.

---

[7] A true and correct copy of this discovery response has been attached as Exhibit 1 to the unsworn declaration of Austin P. Smith attached this Response as Exhibit B.

[8] A true and correct copy of this letter has been attached as Exhibit 2 to the unsworn declaration of Austin P. Smith attached this Response as Exhibit B.

[9] A true and correct copy of the conversation with Dropbox Support Chat has been attached as Exhibit 3 to the unsworn declaration of Austin P. Smith attached this Response as Exhibit B.

Kamel testified that he accidentally slammed the trunk to on his personal cell phone in late February 2019. [Kamel Dep. 249:22-250:12].[10] He further testified that he went to Verizon and was unable to retrieve the data from the cell phone. [Kamel Dep. 250:13-16]. This is certainly not evidence of bad faith on the part of Kamel, as the destruction of the cell phone was merely accidental.

Kamel also did not testify that he never texted Richard Fletcher, as misstated by Avenu. Avenu's counsel's questions were vaguely directed toward the time period when Kamel was employed by STA, and Kamel testified that he did not recall texting Mr. Fletcher and did not remember if Mr. Fletcher texted him. [Kamel Dep. 251:9-22]. Furthermore, Avenu has suffered no prejudice as a result of the destruction of the cell phone because Mr. Fletcher produced the text messages exchanged between Kamel and himself.

Lastly, nothing in the record supports Avenu's *belief* that Kamel texted Avenu' clients or texted Avenu's confidential information to third parties. Avenu is in possession of Kamel's work cell phone he used in his employment with Avenu. However, Avenu presented no evidence that Kamel ever used texting as a way to communicate with clients. This is clearly meritless request by Avenu. The Court should deny Avenu's request for sanctions.

## C.     Kamel is Entitle to His Reasonable Attorneys' Fees and Costs

Avenu's Motion to Compel fails Rule 26(g)(1)'s certification requirement and the Court should impose Rule 26(g)(3) sanctions because Avenu's "certification violates this rule without substantial justification." FED. R. CIV. P. 26(g)(1)(B), 26(g)(3). Avenu's purpose in filing this Motion to Compel was to "harass, cause unnecessary delay, or needlessly increase the cost of litigation" and was "unreasonable[,] unduly burdensome [and] expensive, considering the needs

---

[10] A copy of excerpts of the deposition transcript of Ted Kamel has been attached as Exhibit 4 to the unsworn declaration of Austin P. Smith attached this Response as Exhibit B.

7

of the case, prior discovery in the case, the amount in controversy, and the importance of the issues at stake in the action." FED. R. CIV. P. 26(g)(1)(B).

Kamel already conducted a forensic image of his personal email account and produced documents derived from that search. [*See* Ex. A, ¶¶ 4-7]. Avenu's request needlessly increases Kamel's litigation costs by having to oppose a motion that threatens to invade Kamel's privacy, while providing no substantial, if any, discovery benefit. From the relevant case law, Avenu should know that a request to search through an employee's personal device is almost never warranted. *See Areizaga*, 2016 WL 9526396, at *3; *A.M. Castle & Co. v. Byrne*, 123 F. Supp. 3d 895, 900 (S.D. Tex. 2015) (citing cases); *In re Weekley Homes, LP,* 295 S.W.3d 309, 317 (Tex. 2009) (opining that under federal case law, direct access to a party's electronic device requires a showing by the requesting party that the responding party has "defaulted in its obligation to search its records and produce the requested data."). Thus, Avenu filed its Motion to Compel without any substantial justification and Kamel is entitled to his reasonable attorney's fees and costs incurred in responding to the motion.

### IV. CONCLUSION & PRAYER

In conclusion, Kamel respectfully requests that the Court deny Avenu's Motion to Compel. Avenu has shown no justification for filing this Motion to Compel as Kamel has already satisfied his discovery obligations and produced relevant documents from Kamel's personal email account. This is merely another attempt to drive-up the litigation costs for Kamel, and Kamel requests that the Court order Avenu to pay all reasonable attorneys' fees and costs incurred by Kamel in responding to Avenu's meritless Motion to Compel.

Date: December 6, 2019                    Respectfully submitted,


By: */s/ Austin P. Smith*

8

        Joseph Pevsner
        State Bar No. 15874500
        Joseph.Pevsner@tklaw.com

        Austin Smith
        State Bar No. 24102506
        Austin.Smith@tklaw.com

        THOMPSON & KNIGHT, LLP
        One Arts Plaza
        1722 Routh Street, Suite 1500
        Dallas, Texas 75201
        Tel. (214) 969-1700
        Fax (214) 969-1751

        **ATTORNEYS FOR PLAINTIFF TED KAMEL**

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that they caused a true and correct copy of the foregoing to be served on the following counsel of record by the Court's electronic filing system on December 6, 2019:

    Michael P. Royal
    Mark Flores
    Littler Mendelson, P.C.
    2001 Ross Avenue
    Suite 1500, LB 116
    Dallas, Texas 75201-2931

        */s/ Austin Smith*
        Austin Smith