

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF TEXAS**
**TYLER DIVISION**

| | | |
|---|---|---|
| TED KAMEL, | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | NO. 6:18-cv-00422-JDK-KNM |
| | § | |
| AVENU INSIGHTS & ANALYTICS, LLC, | § | |
| | § | |
| Defendant. | § | |
| | § | |

**PLAINTIFF TED KAMEL'S REPLY IN SUPPORT OF**
**PLAINTIFF'S MOTION FOR PARTIAL SUMMARY JUDGMENT**

Plaintiff Ted Kamel ("Kamel") files this Reply to Defendant Avenu Insights & Analytics, LLC's ("Defendant" or "Avenu") Response to Plaintiff's Motion for Partial Summary Judgment (the "Motion") as follows:

## I.      INTRODUCTION

Avenu's has failed to show any evidence that raises a material fact issue that would prevent the Court from granting Kamel's Motion in its entirety. Accordingly, and for the additional reasons set out below, Kamel's Motion should be granted.

## II.      ARGUMENTS AND AUTHORITIES

**A.      The 2017 Agreement is Unenforceable Because Kamel Never Signed It.**

Aven has still failed to provide evidence of a signed 2017 Agreement between the parties. Avenu cites to *Keurig Dr Pepper Inc. v. Chenier* to argue that the recorded ADP acknowledgment is sufficient to show that the parties intend be bound by 2017 Agreement without requiring Kamel's signature. *Keurig* is distinguishable for several reasons.

First, the court in *Keurig* found it important that "KDP provide[d] evidence that before Chenier could receive KDP stock, Chenier was required . . . to access and accept the Agreements.

Lastly, KDP provides evidence that Chenier accepted the RSU Awards." *Id.* at \*9. The court held that "[i]n Texas [that was] sufficient to bind Chenier to the Agreements." *Id.*

By contrast, Avenu has provided no evidence that Kamel was required to acknowledge the 2017 Agreement before it provided him with confidential information or could continue his employment with Avenu. In fact, according to Bullion, an Avenu employee could "review" or "view," but not "acknowledge," the 2017 Agreement and continue to access documents on the ADP system. [Bullion Depo at 69:23-70:4].[1] According to Avenu, a similar report would show the employee only viewed the document. [*See* AVENU (KAMEL) 0001060].[2] Thus, the evidence shows that Kamel could continue to access and "review" documents on ADP even if he did not acknowledge the 2017 Agreement.

Third, the consideration for the agreements in *Keurig* were restricted stock unit award ("RSU Award") valued over $600,000.00, which Chenier accepted. There was no monetary compensation given to Kamel for allegedly entering into the 2017 Agreement.

Fourth, unlike the 2017 Agreement, there is no indication that the agreement in *Keurig* contained a signature block for the employee physically sign. *Id.* at \*9. This is an important distinction given the case law cited in Kamel's Motion.

The evidence Avenu cites also does not represent what Avneu says it does. [*See* AVENU (KAMEL) 0000934]. The email does not show it was sent to Kamel's email address. *Id.*; [*see also* Kamel Dep. at 192:17-193:7 (testifying that he does not recall ever receiving this email)].[3]

---

[1] The deposition excerpts of April Bullion, Avenu Insights & Analytics LLC's Corporate Representative, have been attached as Exhibit 1 to the unsworn declaration of Austin Smith attached to this Response as Exhibit A. Ms. Bullion was designated to testify as to matters listed on Plaintiff's deposition notice attached as Exhibit 2 to the unsworn declaration of Austin Smith attached to this Response as Exhibit A.

[2] The documents identified as [AVENU (KAMEL) _____] have been attached as Exhibit 3 to the unsworn declaration of Austin Smith attached to this Response as Exhibit.

[3] The deposition excerpts of Ted Kamel have been attached as Exhibit 4 to the unsworn declaration of Austin Smith attached to this Response as Exhibit A.

Although the presence of a signature block in the agreement, *standing alone*, may be insufficient to establish that the parties intended Kamel's signature as a condition precedent to the enforceability of the agreement, Kamel does not solely rely on the signature block. Furthermore, the cases cited by Avenu are distinguishable because those cases involve motions to compel arbitration. *See Huckaba v. Ref-Chem, L.P.*, 892 F.3d 686 (5th Cir. 2018); *Firstlight Fed. Credit Union v. Loya*, 478 S.W.3d 157 (Tex. App.— El Paso 2015, no pet.). In the context of enforcing an *arbitration agreement*, in order for an employer to prove an employee accepted the terms of an arbitration agreement as a matter of law, the employer need only prove that the employee had *notice* of the arbitration policy and *continued working* with knowledge of the policy. *See Wal-Mart Stores, Inc. v. Constantine,* 2018 WL 2001959, at *5 (Tex. App.–Dallas, Apr. 30, 2018).  In this case, the parties intent to be bound by the 2017 Agreement, a *noncompetition agreement*, required much more, including the presence of Kamel's wet signature.  *See Marsh*, 354 S.W.3d at 770

In addition to the signature block, Kamel has presented conclusive evidence for the Court to find as a matter of law that the parties' intent to be bound by the 2017 Agreement required Kamel's signature. Paragraph 7 of the 2017 Agreement also contains the following statement: "This Agreement sets forth the entire understanding of the parties regarding the subject matter contained herein … and shall not be modified except by a written document signed by all parties." [AVENU (KAMEL) 0000008, ¶ 7]. This signature block, along with the clause in the 2017 Agreement barring amendments without a writing signed by both parties, shows that the parties intended that signatures were required in order to be bound by the 2017 Agreement. *See Scaife v. Associated Air Ctr., Inc.,* 100 F.3d 406, 410–11 (5th Cir. 1996); *In re Bunzl USA, Inc.*, 155 S.W.3d 202 (Tex. App.—El Paso 2004, orig. proceeding [mand. denied]).

No reasonable juror could possibly find that the parties intended to be bound by the 2017 Agreement without Kamel's signature.

**B.      The 2017 Agreement is Unenforceable Because it is Not Supported by Valid Consideration.**

Kamel argued in his motion that he is entitled to judgment on Avenu's claims arising from the 2017 Agreement due to a lack of consideration. Avenu's response failed to identify a genuine issue of material fact on this topic for several reasons.

Avenu failed to respond to the argument that it is bound by its inability of its designated corporate representative to identify any such information at the deposition. Avenu's corporate representative testified that Kamel received confidential information before he allegedly signed the Agreement and that she was unaware of any additional confidential or proprietary information he received after he allegedly signed the Agreement. [Bullion Dep. at 83:5-14, 84:5-16, 86:11-15].

Second, Avenu failed to demonstrate that any of the information of documents cited by Avenu are actually confidential. In fact, Kamel has conclusively proven that the information is publicly available. [Fletcher Dep. at 102:2-11, 161:12-162:11]; *see also* [Fletcher Dep. at 50:11-15, 52:15-20] (testifying that it is not possible to keep pricing information from a competitor in this market).[4] The evidence cited by Avenu also does not stand for the proposition that the governmental entity names, employee names and contact information were exclusively obtained by Kamel from SalesForce. Avenu actually admits that some of the contact information Kamel received was not contained in the SalesForce database. [Dkt. #57 at 14 ("With the exception of the City of Baytown . . . .)].

---

[4] The deposition excerpts of Richard Fletcher have been attached as <u>Exhibit 5</u> to the unsworn declaration of Austin Smith attached to this Response as Exhibit A.

Lastly, Avenu has failed to address the fact that Avenu was already under an obligation to provide Kamel with confidential information pursuant to the 2006 Confidentiality Agreement. In the Confidentiality Agreement signed on March 20, 2006, GRS (Avenu's predecessor) promised it would provide Kamel access to confidential information, including client lists. Accordingly, Avenu was already obligated to provide Kamel with confidential information, including client lists. *See Eurecat US, Inc. v. Marklund*, 527 S.W.3d 367, 390 (Tex. App.—Houston [14th Dist.] 2017, no pet.) ("[Employees] already were required to maintain the confidentiality of [Employer's] trade secrets and confidential information under [previous] agreements"). Because consideration must consist of something that the providing party is not already obligated to provide, any provision of confidential information after Kamel allegedly electronically signed the 2017 Agreement does not constitute valid consideration. The Court should find as a matter of law that Avenu failed to provide Kamel with additional consideration after he allegedly signed the 2017 Agreement.

**C.    The 2017 Agreement is Unenforceable Because it is Overbroad, Unreasonable, and Contrary to Public Policy.**

Even if the 2017 Agreement did meet the requirements of a contract under Texas law, the restrictive covenants in that agreement would nevertheless be unenforceable because they are unreasonable as a matter of law. Avenu essentially concedes this point by failing to put forth any evidence or argument that the restrictive covenants in the agreement are reasonable, thus enforceable. Kamel therefore is entitled to summary judgment on every claim that is predicated on the enforceability of the restrictive covenants, namely: Kamel's declaratory action that the 2017 Agreement is unenforceable and Avenu's breach of contract claims.

In Texas, the general rule is that every contract "in restraint of trade or commerce" is unlawful. *Smith v. Nerium Int'l, LLC*, No. 05-18-00617-CV, 2019 WL 3543583, at *4 (Tex. App.–

–Dallas, Aug. 5, 2019, no pet.) (citing TEX. BUS. & COM. CODE § 15.05(a)). Second 15.50(a) contains a narrow exception if certain requirements are met. One such requirement is that the covenant be "ancillary to or part of an otherwise enforceable agreement at the time the agreement is made." *Id*. § 15.50(a); *see also Marsh USA Inc. v. Cook*, 354 S.W.3d 764, 773 (Tex. 2011). Second, an "otherwise enforceable agreement" must be one that gives rise to "an interest worthy of protection" or that reasonably relate to the promisee's "legitimate interest being protected." *Marsh USA Inc, 354* S.W.3d at 775, 778. In addition, a covenant not to compete is enforceable only "to the extent that it contains limitations as to time, geographical area, and scope of activity to be restrained that [i] are reasonable and [ii] do not impose a greater restraint than is necessary to protect the goodwill or other business interest of the promisee." TEX. BUS. & COM. CODE § 15.50(a).

These requirements apply not only to traditional covenants not to compete, but also to agreements that "restrict [former employees'] solicitation of the former employers' customers and employees." *Marsh USA Inc.*, 354 S.W.3d at 768. In addition, "[i]f a nondisclosure covenant[] has the practical effect of 'prohibit[ing] the former employee from using, *in competition with the former employer*, the *general* knowledge, skill, and experience acquired in former employment,' then it is more properly characterized as a noncompetition agreement." *Oxford Glob. Res., Inc. v. Weekley-Cessnun*, No. CIV.A. 3:04-CV-0330, 2005 WL 350580, at *2 (N.D. Tex. Feb. 8, 2005) (quoting *ZEP Manufacturing Co. v. Harthcock,* 824 S.W.2d 654, 663 (Tex. App.—Houston [1st Dist.] 1988, no writ) (emphasis in original)). That is certainly the case here as the evidence conclusively shows Kamel has relied on his knowledge and experience in the industry and there is no evidence that Kamel has provided any confidential documentation or information of Avenu to third parties.

The 2017 Agreement's primary purpose was to obligate Kamel to provide personal services, and the restrictive covenants attempt to bar Kamel from competing with Avenu in any form, industry-wide. The undisputed evidence shows that the restrictive covenants in the 2017 Agreement are unreasonable, and the entire 2017 Agreement is unenforceable as a matter of law.

Furthermore, the undisputed evidence also clearly shows that Avenu "knew at the time of the execution of the agreement that the covenant did not contain limitations as to time, geographical area, and scope of activity to be restrained that were reasonable and the limitations imposed a greater restraint than necessary to protect [its] goodwill or other business interest," and that Avenue "sought to enforce the covenant to a greater extent than was necessary to protect [its] goodwill or other business interest of the [Avenu]." TEX. BUS. & COM. CODE § 15.51(c). Savage testified that in the course of drafting the 2017 Agreement, Bullion provided him the 13 states listed in the "Central Region" of the noncompete provision. [*See generally* Savage Dep. at 60:1-67:22].[5] He further testified that he spent time researching the laws of the 13 states regarding geographic limitations to ensure that the 2017 Agreement was enforceable. *Id.* Under Texas law, it is well understood that attempting to enforce a noncompetition agreement on an employee in a territory that the employee did not work is unenforceable and illegal. Despite being informed by the law, Avenu decided to include a geographical limitation in its noncompete provision that it new would not be enforced by Texas courts. Avenu cannot hide behind its request for the Court to reform its contract so that the geographical restrictions are reasonable. Kamel should be awarded his "costs, including reasonable attorney's fees, actually and reasonably incurred by [Kamel] in defending the action to enforce the covenant." TEX. BUS. & COM. CODE § 15.51(c).

---

[5] The deposition excerpts of Daryl Savage have been attached as Exhibit 7 to the unsworn declaration of Austin Smith attached to this Response as Exhibit A.

**D.**     **Kamel is Entitled to Summary Judgment on Liability for His Tortious Interference Claim.**

Avenu does not dispute that it interfered with Kamel's employment contract with STA. Instead, Avenu contends as an affirmative defense that its actions were justified. That defense is without merit as a matter of law.

First, it is undisputed that the contractual rights under the 2017 Agreement that Avenu claims to have sought to enforce were in fact invalid because the restrictive covenants are unreasonable. [*See* Part II.C.]. Moreover, the undisputed evidence shows that Avenu unambiguously threatened STA with "extremely costly and disruptive litigation" if STA did not immediately terminate Kamel's employment:

> Based upon my conversations with you, such a result is decidedly not what you want. If that is in fact the case, then immediate termination of Mr. Kamel's employment appears to be HdL's only reasonable option. Given his theft of Avenu's proprietary information, it is the only option Avenu will accept as a solution that would preclude the need to file a claim alleging among other things breach of the Trade Secrets Act.

[AVENU (KAMEL) 0000023]. And it did so despite being fully aware that it did not have any legal basis to assert a cause of action against STA at that time [Savage Dep. at 111:20-113:5].

More troublingly, Avenu made these improper threats even after STA offered to move Kamel to a geographic region (Washington) that was not covered by the 2017 Agreement. [Savage Dep. at 95:17-96:9]. There was no justifiable basis for continuing to threaten litigation under these circumstances, especially in light of the fact that the only confidential information that Kamel allegedly took from Avenu was contact information for clients in Texas. The Court should find as a matter of law that Avenu's affirmative defense of justification fails, grant Kamel's motion and find that Avenu is liable for toritious interference with Kamel's employment contract with STA.

**E.      Avenu's Claim for Breach of the Nondisclosure Provision Fails as a Matter of Law.**

Although Avenu admits it "does not seek to prohibit Kamel from using or disclosing confidential information committed to memory and/or in the public domain," the only evidence Avenu has provided in support of its response is just that. None of the evidence cited by Avenu shows that Kamel sent Avenu's confidential information regarding bids or confidential pricing strategies to STA. *See* [STA 00667]; [STA 00595].[6] That evidence merely shows that Kamel and/or STA knew the prices Avenu was currently charging certain municipalities, which is public information. Avenu also admits that it does not have evidence that Kamel was using Avenu's confidential information related to pricing during his employment with STA. [Dkt. #57 at 5, ¶ 8 ("Kamel led the efforts on behalf of STA to create a HOT program, using confidential information related to Avenu's pricing of plans and other knowledge *presumably obtained* while Kamel worked at Avenu.")]. Kamel is not reading this pricing information from any tangible document of Avenu. He has 12 years of experience in the industry, sold the contracts to these municipalities, and remembers the pricing terms. [Fletcher Dep. at 150:5-11]. Kamel is not required to present evidence that anyone has made a request under the Texas Public Information Act. It is sufficient as a matter of law that the evidence shows that this information is publicly available and accessible.

Additionally, the fact that Kamel may have shown Michael Cordaro a copy of a list that allegedly appeared to be the same client list is merely the result of the forensic search Kamel previously conducted on his personal msn.com email account. [Ex. A, ¶ 10].

Furthermore, the list Kamel sent to Fletcher on June 19, 2018, was a list that Kamel created after his termination from Avenu with the assistance of Cordaro, and without the aid of any

---

[6] The documents identified as [STA _____] have been attached as <u>Exhibit 6</u> to the unsworn declaration of Austin Smith attached to this Response as Exhibit.

confidential information of Avenu. [*See* Dkt. 57 at 14]; STA 00362-83];[7] [Kamel Dep. at 199:8-20]; [Cordaro Dep. at 61:20-62:2].[8] The fact that this new list contains similar contact information as the "Avenu's Confidential Client List" only make sense because all of the client information is publicly available data. [Fletcher Dep. at 161:12-162:11].[9]

The undiputed evidence shows that Kamel did not misappropriate any confidential information of Avenu, and the Court should dismiss Avenu's claim for breach of the nondisclosure provision.

**F.      Kamel Did Not Solicit Avenu's Current or Prospective Clients During the Duration of the Non-Solicitation Provision.**

Avenu cites a number of communications between Kamel and STA that it says proves that Kamel violated the non-solicitation provision of the 2017 Agreement. But as explained below, those fall outside the unambiguous language of the nonsolicitation provision of the 2017 Agreement and definition of solicitation. That is why Kamel is entitled to summary judgment on this claim, and not because of a lack of potential personal profit as Avenu wrongfully asserts.

The only alleged solicitations Avenu identifies are Kamel's post-STA communications with Fletcher. But there is no evidence that Kamel himself solicited any of the entities discussed in these communications.  [KAMEL000204-05 ("Scotty Jones in Victoria *reached out to me* this morning.")]; [KAMEL000195 ("I just got a *communication from* Lauren Justice with Tyler . . . She said they are 'not happy' with Muni. They want to change.")]; [KAMEL000189 ("CM of Whitehouse [ ] *asked me* to engage you.")]; [KAMEL000182-83 (Brownsville *finance director*

---

[7] In order to avoid filing his reply under seal, Kamel directs the Court to the exhibits attached to Avenu's response, which has been filed under seal.

[8] The deposition excerpts of Michael Cordaro have been attached as Exhibit 7 to the unsworn declaration of Austin Smith attached to this Response as Exhibit A.

[9] Kamel further testified the he listed forty-nine different municipal entities under the heading Avenu because he had promised Fletcher that he would stay away from Avenu's clients for the first year of his employment with STA. [Kamel Dep. at 208:1-209:6].

*reached out to him* with an inquiry about sales tax reporting)]; [STA 00667 (communication between Kamel and Fletcher)]; [STA 00668 (communication between Kamel and Fletcher)]; [STA 00669 (communication between Kamel and Fletcher)].[10] Black Law's Dictionary defines solicitation, as "[t]he act or an instance of requesting or seeking to obtain something; a request or petition." *Soliciation*, Black's Law Dictionary (11th ed. 2019). The evidence conclusively shows that Kamel never took any actions that meet that definition. Accordingly, the Court should find as a matter of law that Kamel never solicited Avenu's clients.

Indeed, when asked what actions would violate the 2017 Agreement's nonsolicitation provision, the lawyer who drafted it gave the following example:

> A:    A customer calls the former employee up and asks if they know someone or they are working with someone that can provide services in competition with Avenu, and -- and the employee is, in fact, engaged in employment with a competitor.

[Savage Dep. at 46:2-7]. And, when asked whether the provision would apply if the former employee was unemployed at the time of the customer contact, he admitted:

> Q:    The employee is unemployed and a customer reaches out to him to inquire about Revenue Services, he's not employed with any – any Revenue Service provider, is that in violation of this nonsolicitation agreement?
>
> . . .
>
> A:    Well, it doesn't – the nonsolicitation provision does not apply to the scenario you described.

[Savage Dep. at 47:10-19]. In addition to proving as a matter of law that Kamel never solicited Avenu's clients, Kamel has proven as a matter of law that any client communications occurring after his termination from STA fall outside the scope of the nonsolicitation provision. The Court should dismiss Avenu's claim for breach of the nonsolicitation provision.

---

[10] The documents identified as [KAMEL _____] have been attached as Exhibit 1 to the unsworn declaration of Jared Parks attached to this Response as Exhibit B.

**G.      Avenu cannot prove damages as a matter of law**

There is no blanket rule that Avenu is entitled to nominal damages if it cannot prove actual damages. The cases cited by Avenu involve the disclosure of confidential information to third parties. However, Avenu's contention is that that Kamel emailed a list containing confidential information to himself.[11] But even if that document—which is comprised of publically available information—were covered by the nondisclosure provisions in the 2006 or 2017 agreements, the evidence conclusively shows that Kamel never transferred or disclosed the list to any third-party. No reasonable jury could find that Kamel emailing a list containing confidential information to himself damaged Avenu.

Avenu asserts that it "can certainly show Kamel's breach of the 2017 Agreement caused damage." [Dkt. #57 at 14]. If that is the case, then Avenu should have presented that evidence its response to Kamel's Motion, and should have included it in its own Motion for Summary Judgment. [*See* Dkt. 50]. Furthermore, Avenu's statement that it believes it can show damages also cuts against its argument that it could be entitled to nominal damages.

**H.      Summary Judgement is Proper on Avenu's Claim that Kamel Breached His Fiduciary Duty**

Avenu does not even attempt to prove the existence of a fiduciary duty following Kamel's termination from Avenu because no such duty exists. Thus, the Court should grant Kamel's Motion and dismiss Avenu's claim for breach of fiduciary duty.

---

[11] Again, the fact that Kamel may maintain access to that client list is merely the result of the forensic search Kamel previously conducted on his personal msn.com email account pursuant to his discovery obligations. [Ex. B, ¶ 4].

### III.    CONCLUSION

There are no genuine issues of material fact that would prevent the Court from granting summary judgment in Kamel's favor.  Kamel therefore respectfully requests that the Court grant its Motion for Partial Summary Judgment in its entirety. Kamel requests all other relief to which it has shown himself justly entitled.

Dated:  December 20, 2019.

Respectfully submitted,

By: */s/ Austin P. Smith*
Joseph Pevsner
State Bar No. 15874500
Joseph.Pevsner@tklaw.com

Austin Smith
State Bar No. 24102506
Austin.Smith@tklaw.com

THOMPSON & KNIGHT, LLP
One Arts Plaza
1722 Routh Street, Suite 1500
Dallas, Texas 75201
Tel. (214) 969-1700
Fax (214) 969-1751

**ATTORNEYS FOR PLAINTIFF TED KAMEL**

13

## <u>CERTIFICATE OF SERVICE</u>

      The undersigned hereby certifies that they caused a true and correct copy of the foregoing to be served on the following counsel of record by the Court's electronic filing system on December 20, 2019:

      Michael P. Royal
      Mark Flores
      Littler Mendelson, P.C.
      2001 Ross Avenue
      Suite 1500, LB 116
      Dallas, Texas 75201-2931

                                      */s/ Austin P. Smith*
                                      Austin P. Smith