# IN THE UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF TEXAS
# TYLER DIVISION

| | | |
|---|---|---|
| AVENU INSIGHTS<br>& ANALYTICS, LLC,<br><br>*Plaintiff*,<br><br>v.<br><br>TED KAMEL,<br><br>*Defendant,*<br><br>v.<br><br>AZAVAR GOVERNMENT SOLUTIONS, INC., LOCALGOV, LLC, AZAVAR TECHNOLOGIES CORPORATION, AZAVAR AUDIT SOLUTIONS, and JASON PERRY,<br><br>*Defendant.* | §§§§§§§§§§§§§§§§§§§§§ | CASE NO. 6:18-CV-00422-JDK-KNM |

## REPORT AND RECOMMENDATION
## OF UNITED STATES MAGISTRATE JUDGE

Before the Court is Plaintiff Avenu Insights & Analytics, LLC's ("Avenu" or "Plaintiff") Second Supplemental Motion for Sanctions Seeking Default Judgment Against Defendant Ted Kamel ("Kamel") (Doc. No. 159), as filed on December 17, 2021. This case was referred to the undersigned pursuant to 28 U.S.C. § 636.[1] The Court **RECOMMENDS** that Avenu's Second Supplemental Motion for Sanctions Seeking Default Judgment Against Defendant Ted Kamel (Doc. No. 159) be **GRANTED-IN-PART and DENIED-IN-PART**.

---
[1] Doc. No. 3.

## BACKGROUND

Defendant Ted Kamel ("Kamel") is a former employee of Plaintiff Avenu Insights & Analytics, LLC ("Avenu" or "Plaintiff").[2] While employed by Avenu, Kamel served as a Client Services Manager, interacting with Avenu's clients in Texas.[3] As part of his work, Kamel gained knowledge about many of Avenu's Texas clients.[4] On or about March 29, 2018, Kamel ended his employment with Avenu.[5] On or about June 1, 2018, Kamel began working for Sales Tax Assurance ("STA"), an Avenu competitor.[6] The claims in this case arise out of Kamel's departure from Avenu, Kamel's subsequent employment with STA, and then Kamel's employment with Defendant Azavar Government Solutions, Inc. et al. ("Azavar") beginning in May of 2019.[7]

Avenu filed an initial Motion to Compel and for Sanctions against Kamel on November 22, 2019,[8] and a Supplemental Brief in Support of its Motion to Compel and for Sanctions on May 3, 2021,[9] in response to Kamel's alleged failure to produce documents and respond to interrogatories. On June 1, 2021, Defendant Kamel's counsel, Mr. Joseph Pevsner, filed a motion to withdraw as Kamel's counsel and a motion for continuance[10] that this Court granted on July 14, 2021.[11] Mr. Allen Gardner made an appearance on behalf of Kamel on July 13, 2021.[12] On December 17, 2021, Avenu filed its Second Supplemental Motion for Sanctions Seeking Default Judgment Against Defendant Kamel[13], the instant motion before the Court. Subsequently, Mr.

---

[2] Avenu's Amend. Answer to Compl., Doc. No. 47, p. 15.
[3] Kamel's Answer to Amend. Answer to Compl., Doc. No. 53, ¶ 12.
[4] *Id.* at ¶ 15.
[5] *Id.* at ¶ 2.
[6] *Id.*
[7] Avenu's Status Report, Doc. No. 126, p. 7.
[8] (Doc. No. 51)
[9] (Doc. No. 126)
[10] (Doc. No. 136)
[11] Doc. No. 142.
[12] Doc. No. 141.
[13] (Doc. No. 159)

Gardner filed a motion to withdraw as Kamel's counsel on January 14, 2022.[14] On April 15, 2022, Kamel filed a motion requesting more time to secure legal counsel[15] that the Court granted on May 5, 2022.[16] Kamel subsequently requested a time extension to secure legal counsel[17] that the Court denied on July 11, 2022.[18]

Avenu argues that death penalty sanctions should be awarded in this action against Kamel based upon Kamel's deliberate acts of perjury, willful acts of spoliation, and failure to comply with the Court's Discovery Orders.[19] Avenu contends that Kamel perjured himself in numerous deposition statements including the following: (i) stating that he had no idea whether his role at STA would involve HOT audits[20]; (ii) stating that he had not allowed anyone to access the information in Avenu's Salesforce database[21]; (iii) statements regarding the use of and purported creation of additional client lists using Kamel's HP desktop[22]; (iv) statements as to Kamel's recruitment to STA by Richard Fletcher[23]; and (v) statements that Kamel had no intention to solicit Avenu's clients[24]. Avenu also contends that Kamel perjured himself through interrogatory responses and fraudulent filings with the Court.[25] Avenu points to Kamel's interrogatory responses indicating that Kamel had not been in contact with Avenu's clients and omitting owning an HP desktop computer.[26] Pertaining to fraudulent Court filings, Avenu highlights Kamel's statements in the Joint Status Report[27] filed with the Court on September 8, 2021, wherein Kamel indicated

---

[14] Doc. No. 166.
[15] (Doc. No. 179)
[16] Doc. No. 183.
[17] (Doc. No. 187)
[18] Doc. No. 189.
[19] Doc. No. 159.
[20] (*Id*. at 7 (citing Kamel Dep., 215:11-216:2))
[21] (*Id*. at 8 (citing Kamel Dep., 180:20-23; 183:11-13))
[22] (*Id*. at 9-10 (citing Kamel Dep., 180:14-23; 200:1-25))
[23] (*Id*. at 11 (citing STA 00640-00642, 00653-00672; Kamel Dep., 118:25-119:14))
[24] (*Id*. at 12 (citing Kamel Dep., 224:6-225:6))
[25] *Id*. at 13-16 (citing Resp. to Rog. Nos. 7-8; Doc. No. 149, p. 2-3; Kamel Dep., 252:1-8, 253:10-21).
[26] *Id*. at 13-15 (citing Resp. to Rog. Nos. 7-8).
[27] (Doc. No. 149)

he no longer had the HP laptop nor the Toshiba laptop in question. Avenu also points to its inability to access three devices due to Kamel's spoliation of evidence: Kamel's Samsung S-10 cellphone; HP desktop computer; and Toshiba laptop.[28] Finally, Avenu argues that death penalty sanctions are warranted as Kamel's conduct is clearly violative of Federal Rules of Civil Procedure 37(e)(2) and 37(b), which require parties to comply with Court Orders, and adequately preserve electronically stored information.[29]

On August 11, 2022, the Court held a joint hearing regarding two motions: (1) Plaintiff Avenu's Supplemental Motion for Sanctions Seeking Default Judgment[30] in case no. 6:18-CV-00422-JDK-KNM; and (2) Defendant Azavar's Motion to Dismiss as Duplicative, and Alternatively, to Consolidate[31] in case no. 6:22-CV-00128-JDK-KNM. The Court ordered supplemental briefing pertaining to the issue of consolidation[32] and ultimately ordered the two cases[33] to be Consolidated on September 19, 2022.[34] Post-consolidation, the Court now addresses Avenu's instant Motion for Sanctions.[35]

## LEGAL STANDARD

Federal courts have the inherent power to "manage their own affairs so as to achieve the orderly and expeditious disposition of cases." *Chambers v. NASCO, Inc.*, 501 U.S. 32, 43, 111 S.Ct. 2123, 2132 (1991) (quoting *Link v. Wabash R. Co.*, 370 U.S. 626, 630–631, 82 S.Ct. 1386, 1388–1389 (1962)). "Courts of justice are universally acknowledged to be vested, by their very creation, with power to impose silence, respect, and decorum, in their presence, and submission to

---

[28] Doc. No. 159, p. 19-20.
[29] *Id*.
[30] (Doc. No. 159)
[31] (Doc. No. 31)
[32] (Doc. No. 193)
[33] Case no. 6:18-CV-00422-JDK-KNM and case no. 6:22-CV-00128-JDK-KNM
[34] Doc. No. 203.
[35] Doc. No. 159.

their lawful mandates." *Id*. (quoting *Anderson v. Dunn*, 6 Wheat. 204, 227, 5 L.Ed. 242 (1821)). A court's inherent power includes the power to punish for contempt and to preserve the integrity of the court by investigating and curing any fraud that is perpetrated upon the court. *Id*. at 44.

Federal Rule of Civil Procedure 37(b)(2) authorizes the district court to strike pleadings or render a default judgment against a party as a sanction for failure to comply with a discovery order. FED. R. CIV. P. 37(b)(2)(A)(iii), (vi). When a district court awards default judgment as a discovery sanction, two criteria must be met. *Tubby v. Allen*, No. 6:16CV972, 2019 WL 2482733 (E.D. Tex. Apr. 25, 2019), *report and recommendation adopted*, No. 6:16-CV-972-JDK-KNM, 2019 WL 2452308 (E.D. Tex. June 12, 2019) (citing *Smith v. Smith,* 145 F.3d 335, 344 (5th Cir. 1998)). First, the penalized party's discovery violation must be willful. *Id.* Second, the drastic measure is only to be employed where a lesser sanction would not substantially achieve the desired deterrent effect. *Id.* The court may also consider whether the discovery violation prejudiced the opposing party's preparation for trial, and whether the client was blameless in the violation. *Batson v. Neal Spelce Assocs.,* 765 F.2d 511, 514 (5th Cir. 1985).

Under Fifth Circuit precedent, a default judgment is appropriate if: (1) there is "a clear record of delay or contumacious conduct by the plaintiff[;]" and (2) "lesser sanctions would not serve the best interests of justice." *Brown v. Oil States Skagit Smatco*, 664 F.3d 71, 77 (5th Cir. 2011) (Dismissal is an extreme sanction, and the Court should consider lesser sanctions if appropriate.); *See Sturgeon v. Airborne Freight Corp.*, 778 F.2d 1154, 1159 (5th Cir.1985). A default judgment is a more appropriate sanction when the objectionable conduct is that of the client, and not the client's attorney. *See Brown*, 664 F.3d at 77; *Brinkmann*, 813 F.2d at 749; *See also LBDS Holding Company, LLC v. ISOL Technology, Inc.*, 2015 WL 12765990, at *3 (E.D.Tex. May 15, 2015).

5

## ANALYSIS

### A. Deposition Testimony and Discovery Responses

To be sure, Avenu identifies several instances of inconsistent testimony by Kamel that Kamel has not, to date, been able to adequately justify. These instances include Kamel's deposition testimony as to the use of Avenu's SalesForce data and customer lists, as well as Kamel's testimony regarding his recruitment to STA.[36] Such testimony is contradicted by Avenu's other after-acquired evidence.[37] Avenu also identifies statements made in interrogatories as to the locations of electronic devices that contradict Kamel's earlier deposition testimony.[38] In light of this conduct, it is clear that Kamel has defied the Court's Discovery Orders.[39]

Pursuant to Federal Rule of Civil Procedure 37(b)(2)(A), a party who fails to obey a court's order or to permit discovery may be subject to sanctions in the district where the action is pending. Further, Rule 37(b)(2)(C) requires that '[i]nstead of or in addition to the orders [described under Rule 37(b)(2)(A)], the court must order the disobedient party…to pay the reasonable expenses, including attorney's fees, caused by the failure[.]" Fed. R. Civ. P. 37(b)(2)(C); *See Orchestrate HR, Inc. v. Trombetta*, 178 F. Supp. 3d 476, 500 (N.D. Tex. 2016). Here, Avenu urges that "the harshest sanctions available" should be imposed on Kamel—that is, rendering a default judgment against Kamel.[40]

"[R]endering default judgment is equally as harsh a sanction as dismissing the case of a plaintiff with prejudice." *Pressey v. Patterson*, 898 F.2d 1018, 1021 n.2 (5th Cir. 1990). The Fifth Circuit has deemed dismissal with prejudice to be a "draconian remedy" and a "remedy of last

---

[36] Doc. No. 159, p. 8-11 (citing Kamel Dep., 118:25-119:14180:14-23; 183:11-13; 200:1-25).
[37] *See* Doc. No. 159 *generally* (citing STA 00016-27; 00043-50; 00064; 00074; 00283; 000313-314; 00320; 00322; 00346; 00353; 00357; 00477; 00487; 00640-642; 00653-672; Cardaro Dep., 25:12-23; 27:2-4; 28:11-17; 30:21-22; 326-18; 59:11-25; 66:3-16; 68:5-25.
[38] *See* Doc. No. 159, p. 14-16 (citing Resp. to Rog. No. 8; Kamel Dep., 252:1-8); *See* Doc. No 149, p. 1-3.
[39] *See* Doc. No. 26.
[40] Doc. No. 159, p. 16.

resort." *F.D.I.C. v. Conner*, 20 F.3d 1376, 1380 (5th Cir. 1994) (hereafter "*Conner*") (quoting *Batson*, 765 F.2d at 515).

*Conner* articulates several factors that "*must* be present before a district court may dismiss a case as a sanction for violating a discovery order." *Conner* at 1380 (emphasis added). First, dismissal is appropriate when a party's refusal to comply with the discovery order is willful or in bad faith. *Id.* (citing *Coane v. Ferrera Pan Candy Co.*, 898 F.2d 1030, 1032 (5th Cir. 1990)). Second, the violation must be attributable to the client, not the attorney. *Id.* Third, the misconduct "must substantially prejudice the opposing party." *Id.* Fourth, dismissal is unwarranted if a less severe sanction would substantially achieve deterrence. *Id.*

Kamel failed to respond to Avenu's Motion for Sanctions Seeking Default Judgment[41]. Local Rule CV-7(d) states that a party's failure to oppose a motion creates a presumption that the party does not controvert the facts set out by the movant and has no evidence to offer in opposition. Kamel was given several extensions by the Court so Kamel could secure counsel and file a response to Avenu's Motion for Sanctions, but Kamel still failed to do so.[42] Due to Kamel's conduct, this Court may properly sanction Kamel. It is within a court's discretion to "fashion an appropriate sanction for conduct which abuses the judicial process." *Chambers*, 501 U.S. at 45.

It is clear the fourth *Conner* factor[43] cannot be satisfied such that death penalty sanctions are warranted in this case. There are less severe sanctions available that would deter future sanctionable conduct by Kamel. Specifically, an award of attorney's costs and fees associated with Avenu's drafting and filing of the instant Second Supplemental Motion for Sanctions Seeking Default Judgment[44] and Avenu's Motion Supplement to its Second Supplemental Motion for

---

[41] (Doc. No. 159)
[42] Doc. Nos. 176, 180, 189.
[43] (i.e. no less severe sanction than dismissal will achieve deterrence)
[44] (Doc. No. 159)

Sanctions[45] is sufficient. The Court notes that Avenu has knowledge of Kamel's false statements because it has obtained the information from third-party sources. Therefore, an award of attorney's fees is sufficient to put Avenu in the position it would have been in had Kamel not provided inaccurate testimony in his depositions and interrogatories.

Avenu argues that because Kamel's monetary resources are limited, an award of monetary sanctions against him would have little deterrent effect.[46] Avenu requests a harsher sanction due to Kamel's assumed inability to pay. A measure of the appropriateness of a sanction is whether it restores the prejudiced party to the same position it would have been in absent the wrongful conduct or destruction of evidence by the opposing party. *Yelton v. PHI, Inc.*, 279 F.R.D. 377, 393 (E.D. La. 2011). Accordingly, it is not for the Court to impose a harsher sanction than required to remedy the conduct in this case by reason of a litigant's financial circumstance.

Avenu attempts to attribute a majority of the lengthy history of this action to Kamel's discovery abuses.[47] However, this case has been significantly delayed due a myriad of issues, including the COVID-19 pandemic[48], and importantly, Avenu's own failure to formally move to add Azavar as a party in this action prior to filing another suit in the Northern District of Texas.[49] Thus, the length of the docket in this case cannot be simply attributed to Kamel's alleged discovery abuses.

### B. Spoliation of Evidence

"Spoliation of evidence is among the range of conduct for which a court may assess sanctions using its inherent powers." *Orchestrate HR, Inc.*, 178 F. Supp. 3d at 489. Under the

---

[45] (Doc. No. 174)
[46] Doc. No. 159, p. 18.
[47] Doc. No. 159, p. 5.
[48] (*See* Doc. Nos. 76, 77)
[49] *See* Doc. Nos. 195, 196, 203.

Spoliation Doctrine, a court may allow the factfinder to draw an adverse inference "that a party who intentionally destroys important evidence in bad faith did so because the contents of those documents were unfavorable to that party." *Russel v. Univ. of Tex.*, 234 Fed. Appx. 195, 207 (5th Cir. 2007). "Bad faith, in the context of spoliation, generally means destruction for the purpose of hiding adverse evidence." *Guzman v. Jones*, 804 F.3d 707, 713 (5th Cir. 2015) (citing *Mathis v. John Morden Buick, Inc.*, 136 F.3d 1153, 1155 (7th Cir. 1998)).

A party seeking an adverse inference jury instruction as a sanction must establish that: "(1) the party with control over the evidence had an obligation to preserve it at the time it was destroyed; (2) the evidence was destroyed with a culpable state of mind; and (3) the destroyed evidence was relevant to the party's claim or defense[.]" *Rimkus Consulting Grp., Inc. v. Cammarata*, 688 F. Supp. 2d 598, 615-616 (S.D. Tex. 2010). Here, the case was removed by Avenu to this Court on August 16, 2018.[50] Therefore, Kamel was certainly under a duty to preserve evidence, including ESI, after August 16, 2018.

Kamel is no longer in possession of several electronic devices (a Samsung S-10 cellphone, a Toshiba laptop, and an HP desktop computer) that he previously admitted to having.[51] Kamel admitted to having the Toshiba laptop and HP desktop computer in his possession on the date of his deposition on October 15, 2019.[52] Kamel has admitted to giving his allegedly damaged Samsung S-10 cellphone to the Verizon store in February or March of 2019, well after the initiation of the lawsuit.[53] On September 8, 2021, Kamel stated that the HP desktop computer was replaced by a Dell desktop computer in or around 2012[54], contradicting his prior deposition testimony.[55]

---

[50] Notice of Removal, Doc. No. 1.
[51] *See* Kamel Dep., 252:1-8; 253:10-21; Resp. to Rog. No. 8; Doc. No. 149, p. 1-3; Kamel Suppl. Briefing Re. Cellphone, Doc. No. 92 *generally*.
[52] *See* Kamel Dep., 252:1-8; 253:10-21.
[53] Doc. No. 159, p. 21; Doc. No. 92, p. 1-2.
[54] (Joint Status Report, Doc. No. 149, p. 2)
[55] *See* Kamel Dep., 252:1-8.

Kamel states that the Toshiba laptop had been provided to Kamel by his employer, STA, and was returned to STA upon the end of Kamel's employment.[56]

Because Kamel had a duty to preserve evidence on the three electronic devices after 2018, we turn to whether the destruction of the evidence derives from a culpable mind.[57] Kamel's voluntary relinquishment of the Samsung S-10 cellphone to the Verizon store and the sudden absence of the Toshiba laptop and HP desktop allow for the inference that such evidence was destroyed with a culpable mind.

Crucial information pertaining directly to matters in this case[58] was presumably located on the three electronic devices as the computers and cellular phone were used for work-related tasks.[59] Such information presumably included the use and creation of customer lists, and various text message and email exchanges.[60]

Because Kamel had a duty to preserve the three electronic devices due to ongoing litigation, the destruction of the evidence indicating a culpable mind, and that the evidence was relevant to Avenu's claims, Avenu is entitled to an adverse inference jury instruction to be determined by the Court at the time of trial.

## RECOMMENDATION

For the foregoing reasons, the Court **RECOMMENDS** that Avenu's Second Supplemental Motion for Sanctions Seeking Default Judgment Against Defendant Ted Kamel (Doc. No. 159) be **GRANTED-IN-PART and DENIED-IN-PART**. For the sanctionable conduct of Defendant Kamel, the Court **RECOMMENDS** imposing a monetary sanction against Kamel in the amount

---

[56] Doc. No. 149, p. 3.
[57] *See Rimkus*, 688 F. Supp. 2d at 615-616.
[58] *See id*.
[59] *See* Kamel Dep., 118:25-119:14; 180:14-23; Cardaro Dep., 47:15-22; 50:7-11; 73:25-74:2; 75:7-11; STA 00653-72.
[60] *See id*.

of the reasonable attorney's costs and fees associated with Avenu's drafting and filing of the instant Second Supplemental Motion for Sanctions Seeking Default Judgment (Doc. No. 159) and Avenu's Motion Supplement to its Second Supplemental Motion for Sanctions (Doc. No. 174) to be paid by Kamel to Avenu. The Court **FURTHER RECOMMENDS** the Court issue an adverse jury instruction against Kamel on the issue of spoliation as it pertains to the unknown location of the HP desktop computer, the Toshiba laptop, and the Samsung S-10 cellphone.

Within fourteen days after receipt of the Magistrate Judge's report, any party may serve and file written objections to the findings and recommendations of the Magistrate Judge. 28 U.S.C. § 636(b). A party's failure to file written objections to the findings, conclusions, and recommendations contained in this Report within fourteen days after service shall bar that party from de novo review by the District Judge of those findings, conclusions, and recommendations, and except upon grounds of plain error, from attacking on appeal the unobjected-to proposed factual findings and legal conclusions accepted and adopted by the district court. *Douglass v. United Services Auto. Assn.,* 79 F.3d 1415, 1430 (5th Cir. 1996) (en banc), *superseded by statute on other grounds*, 28 U.S.C. § 636(b)(1) (extending the time to file objections from ten to fourteen days).

So ORDERED and SIGNED this 4th day of October, 2022.

_____
K. NICOLE MITCHELL
UNITED STATES MAGISTRATE JUDGE